UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STAR N. REED,

        Plaintiff,

v.                   5:16-CV-1134
                      (WBC)
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

APPEARANCES:            OF COUNSEL:

OLINSKY LAW GROUP         HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.      KRISTINA D. COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

   This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 13.).

   Currently before the Court, in this Social Security action filed by Star N. Reed ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

Plaintiff was born in 1981. (T. 73.) She has a college degree. (T. 182.) Generally, Plaintiff's alleged disability consists of ulcerative colitis. (T. 181.) Her alleged disability onset date is September 12, 2012. (T. 73.) Her date last insured is June 30, 2015. (*Id.*) She previously worked as a sales promotion representative, social service aide, nursery school attendant, front desk receptionist, and waitress. (T. 182.)

### B.   Procedural History

On February 6, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 73.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 25, 2014, Plaintiff appeared before the ALJ, Cynthia R. Hoover. (T. 27-72.) On March 9, 2015, ALJ Hoover issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-26.) On July 21, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 2-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.   The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 16-22.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2015 and Plaintiff had not engaged in substantial gainful

activity since September 12, 2012.  (T. 16.)  Second, the ALJ found that Plaintiff had the severe impairment of inflammatory bowel disease/ulcerative colitis.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 17.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of medium work.  (T. 18.)[1]  Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work.  (T. 21.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because she failed to follow the treating physician rule.  (Dkt. No. 9 at 10-14 [Pl.'s Mem. of Law].)  Second, and lastly, Plaintiff argues the ALJ's credibility determination was not supported by substantial evidence.  (*Id.* at 14-16.)

### B.   Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly evaluated the medical evidence in the record in determining Plaintiff's RFC.  (Dkt. No. 10 at 5-9 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues the ALJ correctly found that Plaintiff's subjective complaints were not entirely credible.  (*Id.* at 9-10.)

## III.  RELEVANT LEGAL STANDARD

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.  20 C.F.R. § 404.1567(c).

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

### A. Medical Opinion Evidence and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).

The Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. § 404.1527(c). " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of*

---

[2] Effective March 27, 2017, many of the Regulation cited herein have been amended, as have SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

6

*Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-130).

The record contains medical treatment notations and a medical source statement from treating provider, Frank Nemec, M.D. (T. 263-298.) The record also contains two RFC assessments completed by non-examining State agency medical examiners, Judy Panke, M.D. and Robert Hughes, M.D. (T. 78-81, 84-91.)

According to Dr. Nemec's treatment notations, he treated Plaintiff for her ulcerative colitis eight times between April 2010 and November 2014. On April 9, 2010, Plaintiff was three months pregnant and complained of a "flare up." (T. 283.) Plaintiff's treatment history, as outlined in Dr. Nemec's notations, indicated she was diagnosed in 2001 with colitis and started treatment with his office in 2006. (*Id.*) Plaintiff's history stated she was treated with the medication Asacol, intermittent prednisone therapy and 6 mercaptopurine ("6 MP") a day, but had been off prednisone since 2006 and "had been doing well." (*Id.*) Plaintiff's history also indicated Plaintiff was advised to stop the medication 6 MP prior to conception, that she had stopped 6 MP in April, lab results were mostly normal, and Plaintiff recently changed jobs. (*Id.*) In April 2010, Plaintiff complained of having ten bowel movements a day. (*Id.*) Dr. Nemec advised Plaintiff to

increase her medication, Asacol, to twelve times per day and to start another medication, Rowasa. (T. 284.) Dr. Nemec ordered labs and Plaintiff was advised to follow up in three weeks. (T. 285.)

On May 11, 2010, Plaintiff followed up with Dr. Nemec. (T. 278.) She reported her bowel movements decreased to one to three a day since increasing her medication, she was no longer on Rowasa, but was still taking twelve Asacol a day. (*Id.*) Dr. Nemec noted that Plaintiff symptoms were "much better" and decreased her Asacol to nine times a day. (T. 279.) He advised Plaintiff to follow up in six weeks. (*Id.*)

Plaintiff next sought treatment for a flare up six months later on November 16, 2010. (T. 275.) Notations at that time indicated Plaintiff had recently had a baby and wanted to "restart" Asacol. (*Id.*) Notations further indicated Plaintiff was having over ten bowel movements a day with bleeding. (*Id.*) Dr. Nemec prescribed Rowasa, ordered labs, and advised Plaintiff to follow up in three weeks. (T. 276.) Of note, the treatment notations dated April, May, and November 2010, outlined above, were completed two years before Plaintiff's alleged onset date of September 12, 2012.

Plaintiff did not seek treatment again until October 23, 2012. (T. 263.) Notations at that time indicated Plaintiff recently had a second child and was experiencing a flare up with over ten bowel movements a day. (*Id.*) Notations indicated Plaintiff was previously on Asacol and wanted to restart the medication. (*Id.*) Dr. Nemec ordered labs, prescribed Asacol four times a day, and advised follow up in two months. (T. 264.)

Plaintiff sought treatment approximately six months later on May 6, 2013. (T. 265.) At that time she complained of bleeding and "some urgency" with bowel movements. (T. 265.) Notations further contained complaints of abdominal pain,

swelling, diarrhea, gas, and cramps.  (T. 266.)  Dr. Nemec ordered labs and started Plaintiff on a new medication, Lialda four times a day.  (*Id.*)

Plaintiff did not seek treatment again until approximately eleven months later in May 2, 2014.  (T. 271.)  Notations indicated Plaintiff complained of five bowel movements a day and pain primarily in her left lower quadrant.  (T. 271.)  Dr. Nemec ordered an elective colonoscopy and labs.  (T. 272.)  Dr. Nemec's notations did not indicate any change in Plaintiff's medication management.  (*Id.*)  On April 30, 2014, Plaintiff had a normal colonoscopy.  (T. 267-270.)  Plaintiff saw Dr. Nemec on November 19, 2014; however, it appears that treatment notations were not updated since her May 2, 2014 office visit.  (*Compare* T. 287 *with* T. 271.)  Dr. Nemec ordered labs, started Plaintiff on Rowasa, and advised her to follow up in two weeks.  (T. 288.)

Dr. Nemec completed a "Crohn's & Colitis Medical Source Statement" form in November of 2014.  (T. 290-293.)  Dr. Nemec stated that Plaintiff suffered from ulcerative colitis with symptoms including diarrhea, abdominal pain and cramping, vomiting, and fatigue.  (T. 290.)  He wrote that during "flares" Plaintiff would be "incapacitated," but the frequency of flares was "indeterminate."  (*Id.*)  He indicated that Plaintiff's last colonoscopy and lab results were within normal limits.  (*Id.*)  Dr. Nemec wrote that different prescription medication had been prescribed to Plaintiff with "little to no success."  (T. 291.)  He checked that box "no" indicating Plaintiff's impairment did not last, or could not be expected to last, at least twelve months.  (*Id.*)  Dr. Nemec indicated that Plaintiff's impairment did not result in functional limitations in walking, sitting, standing, lifting, or performing postural activities.  (T. 291-292.)  He checked the box "yes" indicating Plaintiff would "sometimes need to take unscheduled restroom breaks

during a workday" and wrote Plaintiff would have five to seven bowel movements a day, with urgency. (T. 291-292.) Dr. Nemec checked the box indicating Plaintiff would be absent "[m]ore than four days per month" and wrote "depends if [Plaintiff] is in flare [and] [t]ime varies at that time." (T. 292.)

Dr. Hughes reviewed Plaintiff's record on May 8, 2013. He opined Plaintiff could perform the requirements of medium work. (T. 78-79.) In making his determination, Dr. Hughes noted he relied on Plaintiff's alleged activities of daily living and Dr. Nemec's October 2012 treatment notation. (T. 79.) Dr. Panek reviewed Plaintiff's record on October 3, 2013. She opined Plaintiff could perform the requirements of medium work. (T. 88-89.) Dr. Panek relied on Dr. Nemec's October 2012 notation in making her determination. (T. 89.)

In assessing the medical opinion evidence in the record, the ALJ afforded Dr. Nemec's opinion "no weight." (T. 20.) The ALJ reasoned that Dr. Nemec's opinion was not supported by, or consistent with, the objective medical evidence; documented complaints; course of treatment; or the record as a whole. (*Id.*) The ALJ afforded the opinions of Drs. Panek and Hughes "great weight." (*Id.*)

Plaintiff asserts the ALJ erred in her assessment of Dr. Nemec's opinion on many grounds. First, Plaintiff makes the general argument that a treating source, such as Dr. Nemec, is entitled to more weight than the opinion of a non-treating source. (Dkt. No. 9 at 10-11 [Pl.'s Mem. of Law].) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). The Regulations

"recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *see also Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *see also Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016). Therefore, the ALJ did not commit legal error in affording more weight to the non-examining medical consultants than a treating source.

Second, Plaintiff makes the conclusory assertion that the Dr. Nemec's opinion is consistent with the evidence in the record and the ALJ improperly substituted her own lay opinion for that of the treating source. (Dkt. No. 9 at 11-12 [Pl.'s Mem. of Law].) However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably

11

have reached a different result upon a *de novo* review). Plaintiff failed to show that no reasonable fact finder could have reached the ALJ's conclusion.

Plaintiff further asserts the ALJ did not cite evidence to support her conclusion that medication controlled Plaintiff's symptoms. (Dkt. No. 9 at 12 [Pl.'s Mem. of Law].) However, it is clear from the ALJ's decision that she relied on the very limited treatment notations provided by Dr. Nemec to support her determination. The ALJ stated treatment notations indicated Plaintiff's complaints of flare ups coincided with her pregnancies and/or restrictions from medication while breastfeeding. (T. 20.) The ALJ noted that when taking medication her symptoms were relatively controlled. (*Id.*) Indeed, treatment notations from October 2012 indicated Plaintiff had a flare up starting in her third trimester of her second pregnancy and she wished to restart Asacol which she had run out of. (T. 263.) Plaintiff did not seek treatment until seven months later at which time Dr. Nemec prescribed a new medication and noted she would resume a previous medication, 6 MP, once she was no longer breastfeeding. (T. 266.)[3] Plaintiff did not seek treatment until eleven months later at which time her medication was not changed. (T. 271.) The history portion of treatment notations indicated Plaintiff was treated with Asacol, intermittent prednisone therapy and 6 MP a day, she had been off prednisone since July of 2006 and had been "doing well." (T. 265, 271, 275, 278, 283, 287.) Therefore, substantial evidence in the record supported the ALJ's conclusion that Plaintiff's symptoms improved on medication. Further, the ALJ did not substitute her own lay opinion for that of Dr. Nemec. The ALJ relied not only on his treatment notations, she also relied on the medical opinions of Drs. Hughes and Panek.

---

[3] Notations also indicated Plaintiff was advised to stop taking the medication 6 MP prior to conception. (T. 283.)

Plaintiff further argues the ALJ erred in her conclusion that Plaintiff's need to use the rest room was not supported by objective findings, because the need to use a restroom cannot be confirmed by objective testing and observations. (Dkt. No. 9 at 13 [Pl.'s Mem. of Law].) The Second Circuit has reasoned that a treating source's opinion, which is based primarily on a plaintiff's subjective complaints, rather than the treating source's medical observations, can be afforded less weight. *See Rivera v. Colvin,* 592 F. App'x 32, 33 (2d Cir. 2015) (affirming ALJ's determination that VA finding of 70% disability "relied heavily on [plaintiff's] subjective complaints rather than objective medical evidence."); *Polynice v. Colvin,* 576 F. App'x 28, 31 (2d Cir. 2014) ("Much of what [plaintiff] labels medical opinion was nor more than a doctor's recording of [plaintiff's] own reports of pain."); *Roma v. Astrue,* 468 F. App'x 16, 19 (2d Cir. 2012) (affirming ALJ's decision to give less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably found to be less than fully credible). Further, lack of supporting objective evidence was just one of many factors the ALJ considered in assessing Dr. Nemec's opinion. As stated herein, the ALJ also considered Plaintiff's course of treatment and the record as a whole which was limited and largely coincided with her pregnancies and restrictions in taking medication. (T. 20.)

Plaintiff does not assert that she is unable to perform the exertional and non-exertional demands of medium work. Indeed, all of the medical source opinions in the record support the ALJ's conclusion that Plaintiff could perform medium work as outlined in 20 C.F.R. § 404.1567(c). Plaintiff contends she could not perform substantial gainful work activity because she required ready access to a restroom

multiple times a day.  To be sure, the medical record contained complaints of multiple bowel movements up to ten a day when Plaintiff was experiencing a flare up.  However, as outlined by the ALJ, the medical record indicated Plaintiff's flare ups occurred when Plaintiff was off medication, her symptoms improved while on medication, and overall objective findings were normal.  Further, there were long periods of time in which Plaintiff did not seek medical attention for her condition.  "In the event of such a conflict, we defer to the Commissioner's resolution of conflicting evidence, and reject the ALJ's findings only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-2672-CV, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (citation omitted).

Overall, the ALJ provided good reasons for affording Dr. Nemec's opinion less than controlling weight.  Further, substantial evidence supported the ALJ's determination and therefore the ALJ's RFC determination is upheld.

### B.  Credibility Determination

In determining whether a plaintiff is disabled, the ALJ must also make a determination as to the credibility of the plaintiff's allegations. "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).

The Second Circuit recognizes that "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant," and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a plaintiff's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

The ALJ must employ a two-step analysis to evaluate the plaintiff's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve her pain or other

symptoms; (5) other treatment the plaintiff receives or has received to relieve her pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to her pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairment could reasonably be expected to cause "some" of her alleged symptoms; however, she determined Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible.  (T. 18.)

In making her determination the ALJ noted that despite Plaintiff's impairment she continued to work until 2010 and possibly 2012.  (T. 19.)  The ALJ remarked that Plaintiff ceased working after her second child was born.  (*Id.*)  Plaintiff argues that the ALJ "clearly misunderstood" testimony when she determined Plaintiff quit her last job because she was having a baby.  (Dkt. No. 9 at 15 [Pl.'s Mem. of Law].)

At the hearing the ALJ questioned Plaintiff why she left her last place of employment and Plaintiff testified "because of health issues."  (T. 42.)  However, when further questioned by the ALJ, Plaintiff appeared to acknowledge she left the job because she anticipated her child being born.  (*Id.*)[4]  Any error the ALJ may have made

---

| | | |
|---|---|---|
| 4 | Q: | Okay.  And then your last job was at the preschool.  And why did you leave that job? |
| | A: | Was that the one at Child's Play in -- |
| | Q: | Was that your last job in 2010? |
| | A: | -- yeah.  I worked there from – it was, I think, March or April 2009 through August of 2010 and because of health issues. |
| | Q: | Wasn't that when your son was born? |
| | A: | He was born, right after – about a month after. Mm-hmm. |
| | Q: | Because you had told someone in the record that you left that job in anticipation of your first child? |
| | A: | Mm-hmm. |

in her interpretation of Plaintiff's testimony was harmless because Plaintiff's reasoning for leaving her last job was only one factor considered by the ALJ.  Further, in making her credibility determination the ALJ relied heavily on the medical evidence in the record.  The ALJ held that, "more importantly [than Plaintiff's reasons for leaving her employment], the alleged frequency and severity of symptoms and limitations [were] not supported by the record."  (T. 19.)  The ALJ then provided specific citations to the medical record documenting Plaintiff's complaints, medications, and treatment, which the ALJ concluded did not support Plaintiff's allegations.  (*Id.*)

Plaintiff further asserts the ALJ ignored evidence that Plaintiff receives assistance in caring for her children.  (Dkt. No. 9 at 15-16 [Pl.'s Mem. of Law].)  Contrary to Plaintiff's assertion, the ALJ did not "ignore" this evidence.  The ALJ noted that Plaintiff cared for her children with the help of her husband and parents.  (T. 20.)  The ALJ also noted other activities, such as personal care and the ability to do light chores and go out alone, which she concluded were not as restricting given the limitations alleged.  (*Id.*)  Overall, the ALJ's credibility analysis was proper and supported by substantial evidence in the record.  Because the ALJ adequately explained her reasons for her finding and these reasons were supported by substantial evidence, the ALJ's credibility determination is upheld.  *See Wright v. Berryhill*, 687 F. App'x 45 (2d Cir. 2017) ("Given the sharply limited scope of our review, we see no basis for disturbing the ALJ's credibility determination.").

---

Q: Okay.
(T. 42.)

Overall, the ALJ properly adhered to the treating physician rule and her RFC determination, including her credibility determination, was supported by substantial evidence. Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     March 6, 2018

*[signature: Bill Carter]*

William B. Mitchell Carter
U.S. Magistrate Judge